UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
RICHARD J. SASSI, II,

                        Plaintiff,

         - against -

CLARA LOU-GOULD, individually, FRED
ANTALEK, individually, LEE KYRIACOU,
individually, DEANNA LEAKE, individually,
ELEANOR THOMPSON, individually,
SAM WAY, individually, MIKE FASANO,
individually, JOSEPH BRAUN, individually,
and THE CITY OF BEACON, New York,

                        Defendants.
----------------------------------------------------------x

05 Civ. 10450 (CLB)

***Memorandum and Order***

Brieant, J.

      Before the Court for decision is a motion for summary judgment, filed by Defendants on November 30, 2006, to dismiss all of Plaintiff's claims. (Doc. 58). Opposition papers were filed on December 20, 2006, and reply papers were filed on December 29, 2006. Familiarity with the underlying facts of this extensive litigation is presumed.

Facts and Procedural History

*Sassi I*

      Plaintiff Richard J. Sassi, II, sometimes referred to as "Sassi Jr." is a resident of the City of Beacon ("City"). At all times relevant to this Complaint, he was a Police Officer employed on

a full-time basis by the City.[1] Plaintiff commenced the first of these consolidated civil rights actions on December 13, 2005, by filing a complaint asserting claims against the City, members of the Beacon City Council, and the City Administrator[2]. 05-Civ.-10450 ("Sassi I"). In *Sassi I*, Plaintiff alleged that Defendants violated his derivative First Amendment Right to Free Speech and Free Association with his father (who was at that time the Beacon City Chief of Police) by: 1) enacting Local Law #6 of 2005:[3]  2) rejecting Plaintiff as a candidate for the position of Detective by the City; and 3) publishing a memorandum about alleged "entrapment tactics of [Plaintiff] at local establishments." The memorandum also served as the basis for a claim by Plaintiff for defamation under New York State law. Plaintiff alleged that these acts were done in retaliation for a series of public letters his father wrote to the City Council, criticizing their policies in regard to funding the police department.

Defendants filed motions to dismiss on March 3, 2006. By Memorandum and Order dated May 4, 2006, this Court held Local Law 6/2005 to be void as inconsistent with New York

---

[1] Plaintiff has since been promoted to the position of Detective.

[2] The individual Defendants in Sassi I were: Beacon Mayor and voting City Council member Clara Lou Gould; City Council members Fred Antalek, Lee Kyriacou, Deanna Leake, Eleanor Thompson, Sam Way, Mike Fasano; and City Administrator Joseph Braun.

[3] Council Defendants enacted Local Law #6 of 2005 ("Local Law #6/2005"), which in pertinent respect amended the Beacon City Code:

43-3. Hiring of a Relative.

Section 4. Employment prohibited in department where relative supervises.
    Effective July 1, 2005, no paid employee who works more than seventeen (17) hours per week shall be permitted to work within a department where a relative occupies a supervisory position on the same shift or over all shifts.

State Civil Service law, dismissed the defamation claims, and denied the motions in all other respects.

*Sassi II*

On May 26, 2006, Plaintiff filed the second of these three consolidated actions. 06-Civ-4037. (*"Sassi II"*). In that complaint, Plaintiff asserted claims against substantially the same Defendants for violations of his rights as guaranteed him by Title VII, 42 U.S.C. § 2000 *et seq*. and 42 U.S.C. §§ 1981, 1983, as well as New York State Executive Law § 296 *et seq*. These claims were again based on Defendants' failure to promote Plaintiff to the position of Detective. However, the complaint in *Sassi II* alleged that Defendants promoted Police Officer Jose Rios over Plaintiff because Rios is Hispanic, despite the fact that Rios was less qualified, and had allegedly lied to authorities about his supposed acts of heroism on the job.

*Sassi II* was consolidated with *Sassi I*, and Defendants then moved to dismiss all claims pursuant to Rule 12(b)(6). By Memorandum and Order dated October 10, 2006, this Court granted the motion to the extent that it sought punitive damages against the City, and denied the motion in all other respects.

*Sassi III*

Plaintiff filed the third of these consolidated actions on August 22, 2006. 06-Civ-6374 (CLB) ("Sassi III"). In that complaint, Plaintiff alleged once again that his First Amendment right to Free Speech was violated when Defendants passed him over for promotion to the

position of Detective. Plaintiff alleged that in August of 2006, when there came to be another vacancy for the position of Detective, Defendants conspired to pass over Plaintiff and hire Police Officer Mark Thomas, "despite his physical impairments and lesser qualification than Plaintiff." Unlike *Sassi I*, this First Amendment claim did not derive from the protected speech of Plaintiff's father, but rather from Plaintiff's own speech. Specifically, Plaintiff claimed that he was passed over in retaliation for having filed *Sassi I* and *Sassi II*.

In his most recent submission to the Court, Plaintiff sought to have his complaint dismissed as to all individual Defendants, which the Court so ordered on January 5, 2007. Therefore, the only remaining Defendant is the City. The City moves for summary judgment pursuant to Fed. R. Civ. P. 56 dismissing all of Plaintiff's remaining claims.

Discussion

*First Amendment Claim*

Our Court of Appeals has held that "in order to establish a First Amendment retaliation claim, plaintiff[] must prove that: (1) [he] engaged in constitutionally protected speech because [he] spoke as [a] citizen[] on a matter of public concern; (2) [he] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006) (*quoting Gronowski v. Spencer,* 424 F.3d 285, 292 (2d Cir.2005);

Defendant claims that Plaintiff has failed to make out a *prima facie* case for First

Amendment retaliation based on Chief Sassi's speech[4], because Chief Sassi wrote the letters to the City Council in his official capacity as Police Chief, citing *Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006).  Defendant states that "[c]learly, Plaintiff's father criticized the police department funding and morale in his official capacity as the Chief of Police, an employee of the City of Beacon." Defendant acknowledges that Chief Sassi began every letter by stating he was writing as "resident taxpayer" of the City of Beacon.  (This is but one of several instances where Chief Sassi has shown an uncanny ability to conform his written words to current federal case law.)  However, Defendant argues that "merely characterizing his statements as being made 'in his capacity as a resident and taxpayer' is not the sole standard; otherwise individuals could easily cloak themselves in First Amendment protection by stating such."

The Plaintiff in *Garcetti*, Richard Ceballos, was a deputy District Attorney in the Los Angeles County District Attorney's office.  Ceballos was the calendar deputy, and in that role had "certain supervisory responsibilities over other lawyers." *Id at 1955*. Ceballos had concerns about a police affidavit that had been used to obtain a search warrant, because he believed that the affidavit "contained serious misrepresentations." *Id*. He communicated his concerns in memos, meetings and telephone conversations with his supervisors.

The prosecution proceeded despite Ceballos' objections, and Ceballos testified for the defense in a traverse hearing.  The trial court rejected the challenge to the warrant. Ceballos

---

[4] The Court already held that Sassi II has standing to assert his retaliation claims based on his father's speech. *See Memorandum and Order* dated May 3, 2006. (Doc. No. 46). Chief Sassi also has an action pending before this Court against the City and other Defendants.

claimed that after these events, "he was subjected to a series of retaliatory employment actions." *Id at 1956*.

The Court held that Ceballos' statements were not protected by the First Amendment, because "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline. *Id at 1960*. The Court described the two step approach for determining the constitutional protections accorded to speech of a public employee:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. *Garcetti* at 1958.

In determining whether the employee's statement was made by a citizen on a matter of public concern, the Court in *Garcetti* cited its earlier decision in *Pickering v. Board of Ed. Of Township High School Dist. 205, Will Cty.*, 391 U.S. 563 (1968). In that case, a public school teacher had written to the local newspaper criticizing the Board of Education's funding policies. Some of these statements were apparently false. The Court held in *Pickering* that the teacher's statements were:

> neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally. In these circumstances we conclude that the

-6-

interest of the school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public. *Pickering at* 572.

The Court further held that "Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operations of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." *Id at* 572-573.

The Court in *Garcetti* endorsed this reasoning, citing "the importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion." *Garcetti at* 1958.

This Court concludes that Chief Sassi's statements criticizing the City Council fall within this line of reasoning, and therefore constitute protected speech for purposes of the First Amendment. The Court in *Garcetti* held that "[t]he controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy." *Id at 1959-60*. It is clear that Chief Sassi's comments were not made pursuant to his duties as Chief of Police. Unlike the plaintiff is *Garcetti*, whose job it was to write the communications which he claimed constituted protected speech, Chief Sassi had no such duty to write public letters to the City Council "as a resident taxpayer." Chief Sassi's letters, which harshly criticized the City Council for its funding of the police department, were very similar to the letter in *Pickering*.

Neither has Defendant shown how Chief Sassi's letters, while harshly critical of the Council's performance, impeded his ability to perform his job.  This was a factor considered by the *Garcetti* Court in seeking  "to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions." *Id at 1959*.

Defendant also argues that Plaintiff has failed to show any retaliatory motive in the City's failure to appoint him detective.  As is stated above, in order to establish his retaliation claim Plaintiff must still show that "a causal connection existed between the speech and the adverse employment decision, so that it can be said that [his] speech was the motivating factor in the determination." *Gronowski v. Spencer*,  424 F.3d 285, 292 (2d Cir. 2005).  Even if this third prong of a First Amendment retaliation claim is met, our Court of Appeals has held that "defendants may nevertheless escape liability if they can demonstrate that ... the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech" *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006).

Defendant argues that, even if Plaintiff's father's speech was protected, Plaintiff's claim still fails because he has not shown that the failure to promote him to Detective was motivated by Chief Sassi's protected speech.  In support of this argument, Defendant cites the qualifications of Officer Jose Rios, who Defendant claims was "the most senior member of the

police department considered for the position, and an employee with a distinguished record."
Defendant argues that:

> Officer Rios had seventeen years of the job, Officer Sassi merely had five or six. Officer Rios had received numerous awards, including a certificate of exceptional valor for meritorious acts presented by Governor George Pataki's office, an award given to only 19 police officers in the state last year. Additionally, Officer Rios has received numerous accolades in the community, including one from the Poughkeepsie Journal, which interviewed Rios after he was commended for saving a child's life.

Defendant argues that, in contrast to Rios's extensive qualifications, Plaintiff himself had a "blemished work record". Defendant cites a report by the local branch of the NAACP where unspecified "community members" voiced concerns about Officer Sassi's harassment and arrogance.

Defendant also asserts that Plaintiff has failed to establish any causal link between his filing of *Sassi I* and *Sassi II,* and the Council's decision to hire Officer Mark Thomas instead of Plaintiff. This claim forms the basis of *Sassi III.* Defendant offers a memo dated October 27, 2005, and prepared by two detectives appointed by Chief Sassi to interview candidates for the position of Detective. The memo stated that the interview process resulted in a list of "[t]he top five (5) candidates...with consideration given to their respective performance in the interview, their seniority within the department, their work experience, and recommendations by the uniformed supervisory staff." The memo then listed the officers in the following order: 1) Thomas; 2) Rios; 3) Sassi [Jr.] Defendant argues that "[i]t is an undisputed fact, that Mark Thomas was the officer recommended most highly for the position of detective in October of

2005."

Plaintiff contends that the issue of causation is a triable of issue of fact. As to the appointment of Rios to Detective, Plaintiff argues that Rios was not at all more qualified than Plaintiff. In a series of hypothetical questions devoid of citation to the record, Counsel for Plaintiff writes:

> Where is his service record? Has he ever made an arrest that did not result in dismissal of all charges? What, if any, specialized training has he received? In what areas has he been certified? How many times has he been the subject of disciplinary action, either formal or command? What is his attendance record?

Plaintiff also cites the underlying alleged incidents in related actions before this Court, where Officer Rios was accused by separate plaintiffs of giving a false account of his "life saving" actions that resulted in the award from Governor Pataki's office and positive news coverage.[5] Plaintiff also cites, again without any citation to the record, that Rios was accused of threatening children who were playing near his house with his firearm.

Plaintiff also argues that a retaliatory motive could be inferred from the fact that the City Council passed the Local Law #6:

> During the period of time when Sassi, Sr. was expressing his opinions on multiple matters of public concern, the City Council enacted a law to supposedly stamp out all nepotism in the City. Amazing, in that context, is the circumstance

---

[5] *See Finch et al. v. Braun*, 06-Civ-2097 (CLB); *Tabone v. Braun*, 06-Civ-1666 (CLB). One of the plaintiff's in the latter action was none other than the sister of Chief Sassi's secretary.

> that all of the employees/officers of the City of Beacon, there was only one person actually adversely affected by that law– Richard Sassi, II. Wow! We can just imagine how shocked the Defendants must have been when they learned that from, amongst others, Plaintiff!

Plaintiff also disputes the import of the memorandum that resulted from the interview process. Plaintiff points out (again in a hypothetical question) that, if Mark Thomas was the most qualified for the job according to the interviewers, "why then was he skipped for promotion in favor of Rios – only to be promoted subsequently?" Plaintiff argues that:

> The answer is not difficult to discern. When Rios was improvidently promoted, Thomas was on disabled status and had filed for disability retirement with the State. He could not hold a handgun using both hands. He had undergone multiple surgeries. He simply was not fit for duty. Rios [sic] appointment thus served as a means of buying Thomas time so that he could procure a note from his private treating physician attesting to his sudden and complete recovery.

The Court agrees with Defendant that the alleged incidents underlying the *Tabone* and *Finch* litigation are irrelevant to the question of the City Council's motive, because the plaintiffs in those cases did not complain until after Rios was appointed to the position of Detective. In fact, Chief Sassi himself publicly praised Rios in regard to the incident, very shortly before Rios's appointment. Equally insufficient is Plaintiff's allusion to Rios's alleged brandishing of a firearm in front of children, because Plaintiff offers no evidence that this ever occurred.

Nevertheless, this Court holds that the issue of the City Council's motive in passing over Plaintiff for appointment to the position of Detective, and in passing Local Law #6, remains a triable issue of fact that must be left to the jury. Our Court of Appeals has often repeated its

-11-

general principle that "summary judgment is ordinarily inappropriate where intent and state of mind are at issue ." *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 103 (2d Cir.1989) (*quoted in Cifarelli v. Village of Babylon*, 93 F.3d 47, 54 (2d Cir. 1996). Officer Rios was appointed during a period of bitter acrimony between Plaintiff's father and the City Council. Local Law #6 could reasonably be construed by a jury as a first attempt by the City Council to prevent Plaintiff from becoming Detective, in retaliation for his father's public criticism of the Council. The jury could also conclude that the City Council intended to punish Plaintiff by appointing Rios, whose qualifications appear to be strong but not unquestioned, instead of Plaintiff when the position of detective opened.

The jury could also conclude that the promotion of officer Thomas over Plaintiff was in retaliation for Plaintiff's filing of *Sassi I* and *Sassi II*. The only argument Defendant offers in favor of summary judgment on that issue is that Thomas was found to be the most qualified after the interviewing process, and listed first by interviewing detectives appointed by Chief Sassi to evaluate the candidates. But as Plaintiff points out, that contention is undermined by the fact that Rios was second on that list, but was hired before Thomas.

*Plaintiff's Discrimination Claims Under Title VII, 42 U.S.C. § 2000 et seq. and 42 U.S.C. §§ 1981, 1983, New York State Executive Law § 296 et seq*

Summary judgment is granted to Defendant on the issue on the discrimination claims

-12-

brought by Plaintiff, as they are wholly without merit. Plaintiff has offered <u>no</u> evidence that Rios was promoted over Plaintiff because Rios was Hispanic, other than the fact that Rios is indeed Hispanic, and that the Council cited his fluency in Spanish as a qualification. The Court held, in its decision denying Defendants' Rule 12(b)(6) motion to dismiss, that Plaintiff had adequately alleged facts to defeat that motion. However, Plaintiff has offered nothing subsequently to substantiate those allegations. Our Court of Appeals has held that it is inappropriate "to simply point to the evidence which established [Plaintiff's] *prima facie* case when that evidence does not rebut the independent and sufficient justification offered by [Defendant]. In the absence of evidence rebutting [Defendant's proffered] non-discriminatory policy, summary judgment on this claim was entirely appropriate." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 86 (2d Cir. 2001).

That Plaintiff is Caucasian and Rios is Hispanic, by itself, is insufficient to raise a triable issue as to discriminatory motive when the employer has offered a non-discriminatory reason for an adverse employment action. The City Council cited Rios's fluency in Spanish as *one of several* qualifications. Fluency in Spanish is an obviously useful qualification for a detective, and it is a qualification that many Caucasians have, and that some Hispanics lack.

## Conclusion

Summary judgment is granted as to Plaintiff's discrimination claims under Title VII, 42 U.S.C. § 2000 *et seq*. and 42 U.S.C. §§ 1981, 1983, New York State Executive Law § 296 et seq. Defendant's motion is denied in all other respects. The Court declines to make findings

-13-

contemplated by Rule 54(b) Fed. R. Civ. P.

       Counsel shall attend on April 9 at 9:30 a.m. for jury selection followed by trial. Submit a voir dire request and request to charge as soon as possible.

X

          X

              X

                   X

                       X

                           X

SO ORDERED.

Dated: White Plains, New York
       February 26, 2007

                                                                                                         Charles L. Brieant, U.S.D.J.